IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OREGON ENVIRONMENTAL COUNCIL, *et al.*, | ) |
| *Plaintiffs*, | ) ) ) |
| v. | ) )   Case No. 1:25-cv-04400-CKK ) |
| INTERNAL REVENUE SERVICE OF THE UNITED STATES, *et al.*, | ) ) ) |
| *Defendants*. | ) ) ) |

**DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION FOR BRIEFING SCHEDULE AND EXPEDITED CONSIDERATION AND CROSS-MOTION TO HOLD PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT IN ABEYANCE**

The Defendants Internal Revenue Service of the United States, United States Department of the Treasury, and Scott Bessent, Secretary of the United States Department of the Treasury and Acting Commissioner of the Internal Revenue Service, in his official capacity (hereinafter "Defendants" or "the Government"), respectfully ask the Court to deny Plaintiffs' motion for a briefing schedule and expedited consideration (ECF No. 25). Further, Defendants request that the Court hold Plaintiffs' motion for summary judgment (ECF No. 26) in abeyance pending the outcome of the Defendants' forthcoming motion to dismiss.

**Background**

This case concerns two related tax credits: the Clean Energy Production Credit, codified at 26 U.S.C. § 45Y, and the Clean Electricity Investment Credit, codified at 26 U.S.C. § 48E. Both were added to the Internal Revenue Code in 2022 through the Inflation Reduction Act, Pub. L. 117-169, 136 Stat. 1982 (Aug. 16, 2022). In 2025, as part of the One Big Beautiful Bill Act ("OBBBA"), Pub. L. 119-21, 139 Stat. 72 (July 4, 2025), Congress terminated these credits for certain wind and solar facilities that are "placed in service after December 31, 2027."

1

§ 45Y(d)(4)(A); § 48E(e)(4)(A). The termination provisions for wind and solar facilities "shall apply to facilities the construction of which begins after the date which is 12 months after the date of enactment of this Act." OBBBA §§ 70512(l)(4), 70513(g)(5). OBBBA was enacted on July 4, 2025, so the beginning of construction deadline that wind and solar facilities must meet in order not to be subject to OBBBA's credit-termination provisions is July 4, 2026.

In the wake of OBBBA's passage, the IRS issued Notice 2025-42, "Beginning of Construction Requirements for Purposes of the Termination of Clean Electricity Production Credits and Clean Electricity Investment Credits for Applicable Wind and Solar Facilities" ("the Notice") on August 16, 2025. The Notice is effective for wind and solar facilities that did not begin construction prior to September 2, 2025. Notice § 7. It provides guidance regarding when the IRS will consider certain wind and solar energy facilities to have begun construction for purposes of determining if they are subject to the credit-termination provisions added to §§ 45Y and 48E. As relevant here, the Notice announces that the so-called Five Percent Safe Harbor would no longer generally be available for wind and solar facilities the construction of which begins after September 1, 2025. Notice §§ 2.03, 7. Under a Five Percent Safe Harbor, the IRS would consider construction to have begun pursuant to the statutory requirements as long as five percent of the total project cost had been incurred.

On December 18, 2025, Plaintiffs filed a Complaint for declaratory and injunctive relief that would prevent the IRS from following the Notice and—at least in Plaintiffs' estimation— require the IRS to recognize the Five Percent Safe Harbor in connection with the July 4, 2026 deadline. *See* ECF No. 1. The Complaint asks the Court to hold unlawful and set aside the Notice as arbitrary and capricious under 5 U.S.C. § 706(2)(A) of the Administrative Procedure Act ("APA"). *Id*. Plaintiffs served the Government with the Complaint and Summonses on January 8,

2026. ECF Nos. 20-22. The Government's deadline to answer or move to dismiss is March 9, 2026. *See* Fed. R. Civ. P. 12(a)(2). Despite the Government's response time having not yet expired, Plaintiffs filed a motion for summary judgment on February 13, 2026. ECF No. 25. They did so without the benefit of an administrative record, even though the record is the basis for the Court's review. *See* 5 U.S.C. § 706 ("In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party").

Also on February 13, 2026, Plaintiffs filed a motion asking the Court to adopt an expedited briefing schedule. ECF No. 26. Under Plaintiffs' proposed schedule, the Government would be required to file its response to the summary judgment motion on March 9, 2026, the same date that the response to the Complaint is due, and all dispositive motion briefing by both sides would be completed less than a month later. *See id*. Plaintiffs assert that "good cause" exists for expediting the schedule under 28 U.S.C. § 1657(a) because "[p]rompt resolution of Plaintiffs' Motion for Summary Judgment will provide renewable energy industry participants with the clarity needed to determine whether their projects will qualify for federal tax credits set to expire for any project that does not begin construction by July 4, 2026." ECF No. 26 ¶ 13.

**Argument**

There is no good cause to expedite this case. Preliminarily, the Government rejects Plaintiffs' premise that the Notice "governs" eligibility for these tax credits. ECF No. 26 ¶ 3. Unlike a legislative rule that would be subject to APA notice-and-comment procedures, the Noice is interpretive sub-regulatory guidance. Eligibility for these tax credits is governed by statute. In the event that the IRS disallows a credit claimed by a taxpayer, the taxpayer can challenge the IRS's determination in multiple ways. For instance, if the IRS sends a notice of deficiency proposing to assess additional tax due to the denied credit, the taxpayer can dispute

3

the denial of the credit by filing a petition with the United States Tax Court. *See* 26 U.S.C. § 6213. The taxpayer can also choose to pay the additional tax and seek a refund by filing an administrative claim with the IRS and, if that is disallowed, bringing a suit for refund in a U.S. District Court or the Court of Federal Claims. *See* 26 U.S.C. § 7422(a); 28 U.S.C. § 1346(a)(1). The Notice imposes no restrictions whatsoever on any taxpayer's ability to claim the credit and, if the IRS rejects the credit claim, to seek review through these avenues. In fact, the taxpayer in a deficiency proceeding or refund suit would be free to argue that the Notice is arbitrary and capricious. *See, e.g.*, *Florida Bankers Ass'n v. U.S. Dept. of Treas.*, 799 F.2d 1065, 1071 (D.C. Cir. 2015) (explaining that "the legality of the regulation" at issue could be raised in a separate refund suit). That is, Defendants submit, the proper way for the issue to be litigated—not the present APA suit.

But even if we accept Plaintiffs' faulty premise that the Notice itself limits eligibility for these tax credits, good cause is still lacking. Importantly, for a wind or solar facility that begins construction this year, the tax credits will likely be claimed several years later because they cannot be claimed until the facility is placed in service. *See* Complaint ¶ 31 ("energy infrastructure projects can take years to complete"). To avoid the OBBBA-imposed December 31, 2027 placed in service deadline, taxpayers will need to be able to show that they met the statutory July 4, 2026 beginning of construction deadline, but they can do so retrospectively, when they file their credit claim. Plaintiffs would prefer to rely on the Five Percent Safe Harbor, and all they need for that is a court ruling in advance of their time to claim the credit which may be on an income tax return for 2028 or even later.[1] In a declaration submitted in support of their

---

[1] Under the OBBBA amendments, if a project satisfies the July 4, 2026 beginning of construction deadline, the project may be placed in service **after** December 31, 2027 and still be eligible for the credit. *See* § 45Y(d)(4)(A); § 48E(e)(4)(A).

4

summary judgment motion, Plaintiffs acknowledge that "vacating the Notice after the July 4, 2026 deadline would be helpful." ECF No. 26-19, ¶ 28.

But Taxpayers do not need a ruling in advance of July 4, 2026, because they do not need to do anything else to meet the safe harbor should they prevail. Plaintiffs' summary judgment brief acknowledges that the projects they are concerned about "have already satisfied the Five Percent Safe Harbor" and that they merely seek a ruling that the safe harbor is available. ECF No. 26-1 at 24-25. This is not a situation where taxpayers will be waiting for the Court's ruling before they take some additional action to satisfy the safe harbor in advance of July 4, 2026.[2]

The supposed "urgency of the impending tax credit deadline" (ECF No. 26, ¶ 14) is further belied by Plaintiffs' tactical decision not to seek a preliminary injunction and instead to try to rush the summary judgment briefing. They claim that "preliminary relief would not mitigate Plaintiffs' harm" (*id*. ¶ 8), but this overlooks that they could have filed suit immediately after the IRS issued the Notice on August 16, 2025, and sought a temporary restraining order or preliminary injunction to postpone the Notice's effective date of September 2, 2025. If granted by a court, such relief likely would have allowed taxpayers to rely on the Five Percent Safe Harbor for purposes of establishing a beginning of construction date during the pendency of the lawsuit, and that would have remedied the alleged harms that Plaintiffs complain of now. Rather than taking these available steps to mitigate their own alleged damages, Plaintiffs waited over five months after the Notice's effective date before belatedly proclaiming that an emergency justifies their demand for an expedited schedule. Just as a party that delays applying for relief cannot demonstrate the irreparable harm necessary for obtaining a preliminary injunction, the Plaintiffs' failure to act promptly here compels denial of their motion to expedite. *See Fund for*

---

[2] Given the high likelihood of an appeal in this case, even a decision by this Court prior to July 4, 2026, will not provide Plaintiffs with the finality that they are looking for.

*Animals v. Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1975) (delay of 44 days in seeking injunction was "inexcusable"); *Newdow v. Bush*, 355 F. Supp. 2d 265, 292 (D.D.C. 2005) ("An unexcused delay in seeking extraordinary injunctive relief may be grounds for denial because such delay implies a lack of urgency and irreparable harm"); *Mylan Pharms. v. Shalala*, 81 F. Supp. 2d 30, 44 (D.D.C. 2000) (delay of two months "militates against a finding of irreparable harm").

In light of these considerations, Plaintiffs have not demonstrated good cause for deviating from the "[t]his Court's general practice," which "is to adhere to the traditional civil litigation sequence: the plaintiff files a complaint; then the defendant answers or seeks dismissal of the complaint; then—in APA cases—the Government produce an administrative record; and only then does the Court consider motions for summary judgment." *G.Y.J.P. by and through M.R.P.S. v. Wolf*, Case No. 1:20-cv-01511 (TNM), 2020 WL 4192490, at *2 (D.D.C. July 21, 2020). Plaintiffs cite only a single case for the notion that they can upend this sequence. *See* ECF No. 25 ¶ 6, citing *Planned Parenthood of Greater N.Y. v. HHS*, 2025 WL 2840318, at *7 (D.D.C. Oct. 7, 2025). That case is distinguishable because it was plaintiff's second case challenging the administrative action, plaintiff had twice moved for a temporary restraining order before filing for summary judgment, and the agency defendant did not formally oppose the schedule.

The Government here opposes Plaintiffs' proposed schedule because it intends to file a motion to dismiss for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1). The motion to dismiss will likely argue that Plaintiffs fail to satisfy any part of the traditional three-part Article III standing test, *i.e.*, injury-in-fact, causation, and redressability. Among other reasons, Plaintiffs fail to satisfy the injury-in-fact requirement because their primary theory, that the Notice will cause future increases to electricity rates and pollution, is too speculative. Such "broad-based market effects stemming from regulatory uncertainty are quintessentially

conjectural, and it is difficult to imagine a[n agency] action that would not confer standing under this theory." *New England Power Generators Ass'n, Inc. v. FERC*, 707 F.3d 364, 369 (D.C. Cir. 2013); *see also Entergy Arkansas, LLC v. FERC*, 134 F.4th 576, 584 (D.C. Cir. 2025) (alleged harm to "long-term reliability" of electric grid was insufficient to show "imminent injury").[3]

    The causation and redressability prongs of the standing test are not met either because Plaintiffs' alleged harms are caused by the independent decisions of third parties, most notably energy project developers that are not before the Court.[4] Nor can those alleged harms be attributed to the Notice independently of the OBBBA's credit-termination provisions. *See Texas v. EPA*, 726 F.3d 180, 198 (D.C. Cir. 2013) ("industry petitioners' purported injury was caused by automatic operation of the Act, not the challenged rules. . . . and thus vacating them would not redress the State petitioners' injury.").[5] The redressability prong is not met for the further

---

[3] Plaintiffs have clearly anticipated a challenge to their standing on this basis, and they have tried to preempt it by filing 17 declarations with their summary judgment motion. *See* ECF Nos. 26-3 through 26-19. If the motion to dismiss is denied, the Government may need discovery regarding standing. In particular, the Declaration of Amanda Levin (ECF No. 26-9) is an 83-page expert witness report that attempts to predict the Notice's future effects on electricity markets and thereby to bolster Plaintiffs' assertion that the Notice creates a substantial risk of future harm. In this connection, we note that the D.C. Circuit will "generally require that petitioners demonstrate a 'substantial probability' that they will be injured," *NRDC v. EPA*, 464 F.3d 1, 6 (D.C. Cir. 2007), and an "increased-risk-of-harm theory of standing is not easily satisfied." *Public Citizen, Inc. v. Trump*, 435 F. Supp. 3d 144, 149 (D.D.C. 2019); *see also United Transp. Union v. ICC*, 891 F.2d 908, 913 (D.C. Cir. 1989) ("any petitioner alleging only future injuries confronts a significantly more rigorous burden to establish standing."). Even so, expecting Defendants to rebut an expert witness's analysis on the timetable proposed is patently unreasonable.

[4] The sole exception is Plaintiff Hopi Utilities Corporation ("HUC"), an entity that alleges it is wholly owned by the Hopi Tribe and that says it is planning to claim the § 48E credit. Complaint ¶¶ 17, 108. On information and belief, HUC may be eligible to make an election to be treated as making a payment of tax in the amount of the credit under 26 U.S.C. § 6417, which presumably would result in a refund in the amount of the § 48E credit. If HUC were to claim the credit and be denied, it could then potentially seek the credit through a refund suit. That is an adequate remedy in a court that precludes HUC's ability to obtain APA review under 5 U.S.C. § 704.

[5] Plaintiffs complain of many other agency actions they allege to have harmed wind and solar projects, including by the EPA, Department of Energy, Army Corps of Engineers, and more. *See* Complaint ¶¶ 60-68. It is impossible to isolate the effect of the Notice from these other actions.

reason that any relief in this case must be limited to the named plaintiffs and would not affect any non-party taxpayer's ability to rely on the safe harbor. *See Trump v. CASA, Inc.*, 606 U.S. 831 (2025). The downstream effects Plaintiffs anticipate from non-parties being able to rely on the safe harbor would therefore not come to pass even if the Court rules in Plaintiffs' favor.

The Government's motion to dismiss may also argue that this suit is barred by the Anti-Injunction Act ("AIA"), 26 U.S.C. § 7421(a), which provides that, "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." The AIA is a "jurisdiction-stripping provision." *Maze v. IRS*, 862 F.3d 1087, 1089 (D.C. Cir. 2017); *see also* 5 U.S.C. § 701(a)(1) (APA does not apply "to the extent that . . . statutes preclude judicial review"); 5 U.S.C. § 702 (APA does not affect "other limitations on judicial review"). While we disagree with Plaintiffs regarding the extent to which the Notice affects tax assessment and collection, their goal is to give taxpayers "certainty that they have qualified for the tax credits" in advance of claiming them by making the Five Percent Safe Harbor applicable to the July 4, 2026 beginning-of-construction deadline (ECF No. 26-1 at 25), and that likely falls within the ambit of the AIA. *See Alexander v. Americans United Inc.*, 416 U.S. 752, 760-61 (1974) (applying the AIA in analogous circumstances where the "purpose of respondent's action was to restore advance assurance that donations to it would qualify as charitable deductions.").

These are serious issues that deserve thorough consideration on the Government's forthcoming motion to dismiss. They should not be rushed through expedited briefing, nor should they be considered in conjunction with Plaintiffs' premature merits arguments. To the contrary, this Court's obligation to assure itself of its jurisdiction to hear the case before proceeding to the merits is "inflexible and without exception." *Steel Co. v. Citizens for a Better*

*Env't*, 523 U.S. 83, 95 (1998) (quotation omitted). And from a practical perspective, "staying further briefing of the plaintiff's summary judgment motion will allow the parties to avoid the unnecessary expense, the undue burden, and the expenditure of time to brief a motion that the Court may not decide." *Furniture Brands Int'l, Inc. v. U.S. Int'l Trade Com'n*, Civil Action No. 1:11–00202 (JDB), 2011 WL 10959877, at *1 (D.D.C. Apr. 8, 2011).

## Conclusion

For the foregoing reasons, Defendants request that the Court enter an Order denying Plaintiffs' proposed schedule and holding the motion for summary judgment in abeyance until after the forthcoming motion to dismiss is decided. A proposed order accompanies this brief.

Dated: February 23, 2026

Respectfully Submitted,

BRETT A. SHUMATE
Assistant Attorney General

JOSHUA WU
Deputy Assistant Attorney General

*/s/ Edward J. Murphy*
EDWARD J. MURPHY
ROBERT J. ATRAS
Trial Attorneys, Civil Division
Tax Litigation Branch
U.S. Department of Justice
P.O. Box 227
Washington, DC  20044
Tel: (202) 307-6064 (Murphy)
Tel: (202) 598-3738 (Atras)
Fax: (202) 514-5238
Edward.J.Murphy@usdoj.gov
Robert.J.Atras@usdoj.gov